Christopher D. HINKLE, Appellant

v.

CITY OF PHILADELPHIA, Board of Pensions and Retirement.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 2005.

Decided Aug. 17, 2005.

Mark W. Voigt, Plymouth Meeting, for appellant.

Frederick J. Gentile, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge PELLEGRINI.[1]

Christopher D. Hinkle (Claimant) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) affirming the decision of the Philadelphia Board of Pensions and Retirement (Board) denying his petition for a service-connected disability pension because his injuries were not solely the result of the performance of his job duties.[2]

Claimant worked for the Philadelphia Parking Authority (PPA) as a parking enforcement officer. During the course of his employment, Claimant alleged that he suffered three injuries: 1) an October 17, 1997 left leg injury; 2) a December 31, 1998 back injury; and 3) an August 28, 1998 knee/back injury. Claimant worked for the PPA until October 8, 1999, when he stopped working because he felt he "couldn't walk the beats" anymore. (Reproduced Record at 98a.) On November 14, 2001, the PPA approved a work-related separation from employment due to permanent and partial disability as a result of his work-related injuries. On April 16, 2001, Claimant was terminated from his employment and he applied for Service–Connected Disability Benefits under Plan "J." When his application was denied at a regularly scheduled Board meeting on May 16, 2002, Claimant requested and was granted a hearing.

In support of his application, Claimant produced evidence of all three injuries including hospital records, physical therapy records, an orthopedic utilization review report, and PPA Personnel Department records. The Board held the hearing open so that Claimant could produce the medical records of his primary treating physician, Lisa A. Dructor, D.O., (Dr. Dructor). Claimant produced those records for the Board to review and included among them a letter to the Board from Dr. Dructor stating the following:

> [Claimant] sustained severe injuries to his back and left knee on August 28, 1999 when he fell off a curb while performing his duties as a parking enforcement officer ... [and] suffers from multiple herniated discs in his lumbar spine as well as cartilage damage and severe degenerative disease in his left knee.... [Claimant] is permanently dis-

1. This case was reassigned to the authoring judge on June 30, 2005.

2. Chapter 22–401 of the City of Philadelphia Public Employees' Retirement Code, Service–Connected Disability Retirement Benefits, *added,* Bill No. 980843 (approved January 13, 1999), provides:

(1) *Qualification.* Any member found by the Board to be permanently incapacitated from further performance of duty, which incapacity *resulted solely from the performance of the duties of the member's position* and was not caused by the member's own wrongful conduct, shall be retired and shall receive service-connected disability retirement benefits. To approve an application for such benefits, the Board must find that:

(a) the member is mentally or physically totally incapacitated from the further performance of the duties of the member's position;

(b) such disability is likely to be permanent;

(c) such disability existed while the member was still in the employ of the City; and

(d) an application for service-connected disability retirement benefits is filed within one (1) year after separation from service, except as provided in § 22–401(3).
(Emphasis added.)

abled as a result of these injuries and that his disability is solely related to the injuries he sustained in the course and scope of his duties as a parking enforcement officer with the Philadelphia Parking Authority.

(Original Record at 346.) The Board referred Claimant for evaluation to Andrea Hanaway, M.D. (Dr. Hanaway), Co–Chair of the Board of Pensions and Retirement Medical Panel, who examined Claimant and then referred him for further evaluation to Andrew J. Collier, Jr., M.D. (Dr. Collier), an orthopedic surgeon. Dr. Collier opined that Claimant had sustained an injury in either 1998 or 1999 and was permanently partially disabled from performing his job duties, but that his disability was unrelated to his 1998 or 1999 injury. Dr. Hanaway concurred with Dr. Collier's opinion and also addressed Dr. Dructor's opinion, noting that Dr. Dructor's records did not document multiple herniated discs and there was a lack of any documentation suggesting that Claimant's herniated disc resulted from his 1999 injury or occurred as a result of his employment with the PPA.

Assigning greater weight to the opinions of Dr. Collier and Dr. Hanaway than Claimant's doctor, the Board denied Claimant's application because his injuries were not solely related to performance of his job duties with the PPA as required under the Retirement Code. Claimant appealed to the trial court which denied Claimant's appeal and this appeal followed.[3]

Claimant first contends that the Board's decision should be reversed because it capriciously disregarded competent evidence of record. More specifically, he argues that he submitted to the Board Dr. Dructor's medical opinion and supporting medical records, but the Board made no findings regarding the credibility of Dr. Dructor's opinions. Claimant asks this Court to refer to *Leon E. Wintermyer v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), which stands for the proposition that this Court must review the Board's adjudication for capricious disregard of competent evidence in appeals under Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. The Board does not dispute that a capricious disregard standard should be used in appeals from its adjudications. Instead, it contends that the capricious disregard standard only applies where the party with the burden of proof does not prevail and was the sole presenter of evidence.[4]

Despite much commentary, *Wintermyer*[5] did not expand the court's scope of

---

**3.** Our scope of review is limited to determining whether the Board violated any constitutional rights, whether its decision was in accordance with the law, or whether its findings of fact were not supported by substantial evidence. *DeBerry v. Board of Pensions and Retirement Municipal Pension Fund*, 137 Pa. Cmwlth. 235, 585 A.2d 616, n. 2 (1991).

**4.** Here, even though Claimant had the burden of proof and did not prevail, both parties presented evidence.

**5.** Justice Saylor's opinion, joined by Justice Castille, has been understood to mean that the capricious disregard standard allows the

court to make new facts based on the record stating:

> [A]gencies are not foreclosed from making affirmative factual findings in matters decided against the claimant. There are many instances in which agencies predicate negative conclusions (for example, that a party failed to meet his burden of proof) upon affirmative facts adduced from the claimant's testimony and evidence, to include cross-examination. *In such cases, Section 704 review for substantial evidence applies to all affirmative findings that are necessary to support the adjudication.* See 2 Pa.C.S. § 704 ("the court shall affirm the adjudication unless it shall find that ... any

review and did nothing more than expand the capricious disregard standard as a "shorthand" for several existing and overlapping standards of review involving constitutional, procedural requirements and errors of law regarding the way an agency must explain its decision.

Since the passage of the Administrative Agency Act of 1945, the scope of review that governs judicial review of state administrative agencies has, for all practical intents and purposes, remained the same. It has now been codified at 2 Pa.C.S. § 704 and provides:

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).[6]

---

finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence"). Conversely, it is troubling to suggest that the General Assembly intended for judicial review to be simply unavailable in an instance in which substantial evidence supported the agency's factual findings, but where it was clear beyond doubt that its conclusions were based upon capricious disregard of other evidence. Such a situation would occur, for example, if the agency expressly refused to resolve conflicts in the evidence and make essential credibility determinations.

*Wintermyer*, 571 Pa. at 202, 812 A.2d at 486. A close reading of the opinion seems to suggest that it is bottomed more on an abuse of discretion standard than fact-finding standard.

Justice Cappy, joined by Justice Nigro, believes that when an agency disregards evidence, it commits an error of law, stating that "[w]hile the capricious disregard review has as a component consideration of the evidence offered at a hearing, it is not an inquiry regarding an agency's affirmative findings of fact. Rather, it is a review of the agency's legal conclusions to determine whether in making those legal conclusions, the agency capriciously disregarded evidence of record that would have clearly and beyond doubt commanded a different result. Being a review of legal conclusions, consideration of whether a tribunal capriciously disregarded evidence is a component of the [sic] in accordance with law review." *Id.* at 208–209, 812

A.2d at 490. Justice Cappy then goes on to quote what constitutes a well-reasoned decision under Section 422(a) of the Workers' Compensation Act, 77 P.S. § 834.

Justice Zappala would limit the standard to only where the party with the burden of proof is the sole party to present evidence, yet does not prevail before the fact finder and did not believe a tribunal should not delve into whether the WCJ capriciously disregarded "other evidence."

Justice Newman wrote a concurring opinion agreeing that a determination of capricious disregard was unwarranted in this case and, unlike the others, she would hold that there is no capricious disregard standard of review of agency decisions.

Justice Flaherty did not participate in the case.

6. Pennsylvania's Administrative Agency Law was enacted as part of the same foment that led to the enactment of the Federal Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the state model APA enacted or adopted in 1945. Section 44 of the Administrative Agency Law of 1945 provided:

The court to which the adjudication is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, of the appellant or in violation of section thirty-one to thirty-five inclusive of the act have been violated in the proceeding

Under this scope of review, the General Assembly has only allowed courts to substitute their discretion for that of the agency where there is a violation of a constitutional right, where the decision is not in accordance with the law, or it is in violation of procedural rights guaranteed by the Administrative Agency Law, and where there is no substantial evidence to support the agency decision. Any review of an agency decision must fall within one of those areas.

▉ Included in both the violation of constitutional rights and violation of the procedural rights guaranteed by the Administrative Agency Law is the requirement that an agency explain its decision. An agency is already obligated by federal due process to state reasons for its decision. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Because of the rise of federal due process jurisprudence, the procedural requirements set forth in the Administrative Agency Law are often overlooked, but those provisions also require that an agency must set forth its reasons behind its decision. Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507, provides that:

> All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.[7]

When an agency arrives at a decision where the losing party has presented overwhelming evidence that could require the agency to arrive at a different outcome, both due process and the Administrative Agency Law requires the agency to explain the reasons why it discounted that evidence. Given Justice Cappy's reliance on Section 422(a) of the Workers' Compensation Act, 77 P.S. 834, requiring a reasoned decision, an explanation of why compelling evidence is ignored appears to be one source of the "new capricious disregard" standard. If an agency does not explain in its decision why it did not take evidence into consideration, it would now be considered a "capricious disregard of the evidence standard."

▉ Another source of the *Wintermyer* standard contained in both Justice Saylor's and Justice Cappy's respective opinions is that an agency decision will be vacated or reversed where there is an abuse of discretion. When an agency abuses its discretion, it involves the outcome or how that outcome is reached. Included in the factors to determine whether there is an abuse of discretion is whether there are erroneous legal or factual considerations or the failure to consider relevant factual considerations. *See* B. Schwartz, Administrative Law § 10:16 at 656 (1999). Explaining what capricious disregard means, Justice Cappy's concurring opinion quotes with approval from the majority opinion as follows:

> As stated by the majority, "where there is substantial evidence to support an agency's factual findings [in accord with section 704] and those findings in turn support the [legal] conclusions [in accord with FOP], it should remain a rare instance in which an appellate court would disturb an adjudication based upon ca-

---

before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.
Section 754 of the Administrative Agency Law, 2 Pa.C.S. § 754, contains the same

scope of review from decisions involving local agencies.

7. Section 555 contains virtually the same requirements for local agencies. 2 Pa.C.S. § 555.

pricious disregard." Majority Op. at 487 n. 14 (comments added). More precisely, reversal based on this type of review should occur only where it is "clear beyond doubt" that an agency's legal conclusions were based upon capricious disregard of evidence—a very high bar. Id. at 486. As suggested by the majority, this might occur if "the agency expressly refused to resolve conflicts in the evidence and make essential credibility determinations." Id. It might also be the case where the agency completely ignores overwhelming evidence without comment.

812 A.2d at 492. "Capricious disregard" then is just another name for the agency abusing its discretion and is an error of law when the agency fails to give an indication that it has examined countervailing substantive testimony that had to be considered at arriving at its decision.[8]

 The capricious disregard standard then is nothing more than a shorthand way of referring to an amalgam of existing overlapping legal and constitutional standards mentioned above that safeguard against arbitrariness by state and local administrative agencies by requiring a meaningful explanation of why the losing party's overwhelming evidence was not accepted.[9] Applying this understanding of the capricious disregard standard to the

case at hand, the Board did not capriciously disregard Claimant's medical evidence of Dr. Dructor because it resolved conflicts in the medical evidence by making credibility determinations and did not completely ignore overwhelming evidence without comment. In fact, there was not "overwhelming evidence" from Dr. Dructor, but only a letter to the Board with limited medical documentation which did not support that Claimant suffered certain injuries, e.g., multiple herniated discs.

Claimant then argues that even if there was no capricious disregard of the evidence, the Board's decision was not supported by substantial evidence. However, the Board found that Claimant's injuries did not result solely from his employment with the PPA, and the record contains evidence that Claimant suffers from, among other things, degenerative disc disease, pre-existing ganglion, popliatal cysts and osteoarthritis, which have a disabling effect on both of his knees and his back. Additionally, the record contains evidence that these problems were caused by multiple injuries over time that were unrelated to his job duties.

For instance, with regard to Claimant's knee problems, the record reveals that Claimant sought treatment with Dr. Dructor for knee problems twice prior to the

---

8. In *Slawek v. State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991), our Supreme Court held that while an "abuse of discretion" scope of review is not expressly provided in the Administrative Agency Law or the Local Agency Law, it is included in the requirement that the agency decision be "in accordance with law." Explaining the "law" in that phrase, the court held that to be "in accordance with law" an agency's decision must not represent a manifest and flagrant abuse of discretion or a purely arbitrary execution of its duties or functions.

9. The "old" capricious disregard of the evidence standard formulation—that there is a

violation of that standard when the burdened party is the only party who introduces evidence as to an issue and the agency does not explain why it did not accept the burdened parties' evidence—while subsumed in *Wintermyer*, remains viable. Under the standard in *Wintermyer*, capricious disregard occurs when the agency completely ignores overwhelming evidence without comment, but a determination must be made by the court that the evidence meets that standard. Where only one party presents evidence, however, the failure to credit such evidence still remains a *per se* violation of that standard.

August 28, 1999 accident—once on June 15, 1999 and again on July 20, 1999. (Original Record at 340–341.) Moreover, after a March 14, 2000 independent medical examination, the physician performing the exam found an absence of any significant findings. (Original Record at 134.) After Dr. Collier's January 23, 2002 physical exam, he opined that "arthritic changes in his knee" were unrelated to Claimant's employment with the PPA and were the cause of Claimant's knee problems. (Original Record at 121–122.) Further, Claimant's own doctor opined that he suffered from "severe degenerative joint disease in his left knee." (Original Record at 346.) This evidence constitutes substantial evidence that Claimant's knee-related complaints were not solely caused by his employment with the PPA.

Regarding Claimant's back injuries, Dr. Dructor opined that Claimant's August 28, 1999 injury caused "multiple herniated discs in his lumbar spine as well as cartilage damage." However, Dr. Hanaway, discussing Dr. Dructor's medical records, noted:

> There is no documentation whatsoever of multiple herniated discs in his lumbar spine ... In fact, there is no documentation that [Claimant] injured his back at all in the August 28, 1999 incident. In fact, the only injury to his back is supposedly the injury of December 31, 1998 when he slipped on the ice and twisted his back although he did not fall, and after that injury he was seen at Hahnemann Hospital's Emergency Department, underwent a course of physical therapy for two to three weeks and returned to full duty status ...

(Original Record at 6.) After reviewing all of the medical evidence presented, the Board assigned greater weight to the opinions of Doctors Collier and Hanaway than to that of Dr. Dructor. Because there is substantial evidence to support the Board's findings and this Court may not substitute its judgment for that of the Board which is the sole fact-finder, determiner of credibility, and assigner of weight to the testimony, *Herzog v. Department of Environmental Resources*, 166 Pa.Cmwlth. 114, 645 A.2d 1381 (1994), the Board's determination that Doctors Collier and Hanaway's testimony held more weight than Dr. Dructor's will not be disturbed.

Consequently, because there is substantial evidence to support the Board's finding that Claimant's incapacity did not result solely from his job performance and the Board explained its reasons for making those credibility findings, and there is substantial evidence to support those findings as well, the Board did not capriciously disregard the evidence of record. Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this *17th* day of *August*, 2005, the order of the Court of Common Pleas of Philadelphia County, dated August 10, 2004, is affirmed.

CONCURRING OPINION BY Judge COHN JUBELIRER.

While I concur with the result reached by the majority, I must express my disagreement and concern with parts of the discussion of the "capricious disregard" standard. The term "capricious disregard" has a long and interesting history, and, not surprisingly, some attendant confusion. While the majority opinion does try to clarify the area, I believe it has also created additional confusion. For example, I find confusing the statement that *Wintermyer* "did nothing more than expand the capricious disregard standard as a 'shorthand' for several existing and overlapping standards of review involving con-

stitutional, procedural requirements and errors of law regarding the way an agency must explain its decision." (Majority Op. at 25.) While I agree that an agency must explain its decision, the majority's statement that "[a]n agency is already obligated by federal due process to state reasons for its decisions *and state the evidence it relied upon in reaching those decisions,*" (Majority Op. at 26) (emphasis added), goes beyond what is currently expected. While most administrative agencies do make findings, I do not believe we currently require them, as a matter of federal due process, to state the evidence they relied upon.

The majority seemingly expands the capricious disregard standard to require additional explanation from administrative agencies than is currently required, by stating that: "[i]f an agency does not explain in its decision why it did not take evidence into consideration, it would now be considered a 'capricious disregard of the evidence standard,'" and that federal due process requires that "[w]hen an agency arrives at a decision where the losing party has presented overwhelming evi-

dence that could require the agency to arrive at a different outcome ... due process ... requires the agency to explain the reasons why it discounted that evidence." (Majority Op. at 26.) It appears that the majority opinion would now require more explanation from all administrative agencies than the Legislature did in its 1993 [1] and 1996 [2] "reasoned decision" amendments to the Workers' Compensation Act.

I am particularly concerned about a new test that appears in the majority opinion: an "overwhelming evidence" test. Apparently, agencies are now required to give "a meaningful explanation of why the losing party's *overwhelming evidence* was not accepted." (Majority Op. at 27)(emphasis added). The majority opinion provides no guidance regarding how agencies are to determine what constitutes "overwhelming evidence" in a particular case, and I am concerned that it will require this Court to reweigh the evidence in the whole record to make such a determination on appeal.

In summary, I believe this opinion unnecessarily creates more confusion than it resolves. After thorough review of the

---

1. After adoption of the 1993 amendments, Section 422 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834, provided, in pertinent part:

 All parties to an adjudicatory proceeding are entitled to a reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The adjudicator shall specify the evidence upon which the adjudicator relies in conformity with this section. The adjudication shall provide the basis for meaningful appellate review.

2. After the adoption of the 1996 amendments, Section 422 of the Act provides, in pertinent part:

 All parties to an adjudicatory proceeding are entitled to a reasoned decision contain-

ing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

record, I believe that there is more than substantial evidence in the testimony of Doctors Collier and Hanaway to support the Board's findings and that this simply is not one of those rare cases in which the capricious disregard analysis is warranted. Therefore, while I would affirm the Board, I strongly disagree that we need to rewrite the capricious disregard standard to do so in this case.