# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Gordon, : :
: :
          Petitioner : :
: :
          v. : No. 290 C.D. 2015
: :
Unemployment Compensation : Submitted: July 24, 2015
Board of Review, : :
: :
          Respondent : :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: September 3, 2015**

Laura Gordon (Claimant), pro se, petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) finding Claimant ineligible for benefits pursuant to Section 402(b) of the UC Law (Law).[1] Claimant argues that the Board did not consider all of the reasons she provided for voluntarily quitting her employment; therefore, the Board's findings are

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). Section 402(b) of the Law provides that a claimant is ineligible for compensation if her unemployment is due to voluntarily leaving her employment "without cause of a necessitous and compelling nature." Id.

inadequate, misleading, and unsupported. Because the Board did not capriciously disregard competent evidence and substantial evidence supports the Board's findings, we affirm.

Claimant voluntarily terminated her employment as a Warranty Manager with Pacifico Ford (Employer), a car dealership, in September 2014. (Board Decision, Findings of Fact (FOF) ¶¶ 1, 9.) Claimant filed for UC benefits. The UC Service Center determined that Claimant was ineligible for benefits under Section 402(b) of the Law because Claimant did not meet her burden to show necessitous and compelling reasons for quitting her employment. (Notice of Determination, C.R. at Item 4.) Claimant appealed and a hearing was held before a UC Referee (Referee). Claimant appeared pro se and testified on her own behalf. Employer did not appear to present any evidence.

Claimant testified as follows. Her last day working for Employer was September 9, 2014. (Hr'g Tr. at 2, C.R. at Item 8.) In the months preceding Claimant leaving her employment, Claimant's office was moved into a place abutting a co-worker's office because Employer was reconstructing its building. (Hr'g Tr. at 4.) The two offices were separated by a glass partition. (Hr'g Tr. at 4.) Claimant wanted to keep the glass partition shut because her workload had recently increased and this particular co-worker was loud and often complained. (Hr'g Tr. at 4.) The co-worker, however, wanted to have the partition opened because she had concerns about the temperature in her office and desired fresh air. (Hr'g Tr. at 4.) Claimant stored books in front of the partition to prevent the co-worker from opening the glass. (Hr'g Tr. at 4.)

2

At some point prior to Claimant's separation of employment, Employer's Service Manager went into the co-worker's office and noticed that it was warm. (Hr'g Tr. at 5.) Service Manager then moved the books away from the glass partition without discussing it with Claimant. (Hr'g Tr. at 5-6.) Claimant became upset upon observing that her books were moved. (Hr'g Tr. at 6.) She was about to go speak to Service Manager about the issue when Claimant heard Service Manager hollering her name in a manner that made Claimant think that Service Manager did not want to hear her complaint. (Hr'g Tr. at 6.) Instead of responding to Service Manager, Claimant walked right by him and refused to respond to his attempts to discuss the issue with her. (Hr'g Tr. at 6-7.) Claimant also ignored phone calls from Service Manager. (Hr'g Tr. at 7.) Claimant refused to speak to him because she needed time to cool off and knew that if she spoke to him she "was going to blow [her] top." (Hr'g Tr. at 8.) Service Manager then approached Claimant and told her that she should go home until she was ready to speak to him. (Hr'g Tr. at 7.) Claimant went home and received an email from Employer's General Manager directing Claimant to come back into work. (Hr'g Tr. at 7.) When Claimant returned to work she met with Service Manager and a representative from Employer's Human Resources Department. (Hr'g Tr. at 7.) At some point during the discussion, Service Manager stated that he was going to write Claimant up for insubordination, and the Human Resources representative did not object. (Hr'g Tr. at 7-8.) The conversation made Claimant upset and she told the group "I can't take it anymore. . . . You just don't want to listen to me. . . . I am giving you my two weeks [notice] and that's that." (Hr'g Tr. at 7.)

3

Although Claimant testified that the incident involving the moving of her books was "the straw that broke the camel's back," (Hr'g Tr. at 6), Claimant also testified to other reasons that caused her to leave her job. According to Claimant, Service Manager refused to accept her recommendations on how to improve the functioning of the service department in order to deal with all the recalls. (Hr'g Tr. at 5-6.) Claimant also noted that she has asked for a pay raise for years to no avail. (Hr'g Tr. at 10-11.) Further, General Manager once embarrassed Claimant in front of others for choosing to buy a car from another dealership. (Hr'g Tr. at 11.) Prior to the incident related to the moving of the books, Claimant thought she was having a heart attack that caused her to miss a few days of work. (Hr'g Tr. at 11-12.) Claimant visited a cardiologist and was diagnosed with esophageal spasms brought on by stress. (Hr'g Tr. at 12.) Claimant told General Manager upon her return to work that her health concerns were brought on by stress due to her increased work load and that she needed a pay raise. (Hr'g Tr. at 12.) General Manager refused to give her a raise and told her that he could sublet her job for much less cost to Employer than maintaining Claimant on the payroll. (Hr'g Tr. at 12.) General Manager then denied Claimant's request to sublet the work to her so that she could work from home. (Hr'g Tr. at 12.) Claimant also began experiencing nervousness and twitching in her eye that became progressively worse as she became more upset at work. (Hr'g Tr. at 13.) Finally, Claimant testified about an incident in 2012 when she was written up for leaving the building without permission after she became upset with her co-workers joking around outside her office when they should have been working. (Hr'g Tr. at 15-16.) Claimant's sister was very ill during this time period; however, none of Claimant's co-worker's acknowledged or recognized that her sister's illness is

4

what caused Claimant to behave in such a manner. (Hr'g Tr. at 16-17.) Claimant testified that "all of these things eat at a person" and she could not take it anymore. (Hr'g Tr. at 17.)

The Referee affirmed the UC Service Center's determination that Claimant was ineligible for UC benefits pursuant to Section 402(b) of the UC Law. Claimant appealed the Referee's decision to the Board. After reviewing the evidence presented, the Board made the following findings of fact:

1. The claimant was last employed as a warranty administrator by Pacifico Ford at a final rate of approximately $1,100 per week. The claimant began employment on June 10, 2000, and her last day of work was September 9, 2014.

2. The claimant made a suggestion to the service manager about changing the way the employer did rental bills, but the suggestion was denied by the service manager.

3. The employer was doing construction on its building and the claimant shared an office with another employee.

4. The employee would complain about the temperature of the office and that she needed fresh air.

5. Prior to her separation of employment, the service manager went into the office and moved the claimant's books because he believed it was hot in the office.

6. The claimant was upset that the service manager moved the books and did not discuss it with her.

7. The service manager made attempts to talk to the claimant, but she would walk away from him and not pick up his phone calls.

8. The claimant met with the service manager and a human resources person and was notified that she was being written up for insubordination because she refused to speak to the service manager.

5

9. In mid-August, the claimant gave her two weeks' notice and voluntarily quit her employment because the service manager moved her books and she received a write up for insubordination.

(FOF ¶¶ 1-9.)

The Board recognized that the record included several reasons why Claimant voluntarily terminated her employment; specifically, "dissatisfaction with her pay, wanting to work from home as a sublet, esophageal spasms, eye twitches, a prior write up, and past interactions with employees during her entire employment." (Board Decision at 2.) However, the Board pointed out that Claimant indicated on her application for UC benefits "that she quit because she could no longer tolerate her supervisor or general manager" and that she "testified that the 'straw that broke the camel's back' was when the service manager moved the books in her office and she received a write up." (Board Decision at 2.) Thus, the Board discredited Claimant's testimony that she quit for other reasons. (Board Decision at 2.) On appeal to the Board, Claimant asserted that she quit due to health reasons and made additional assertions; however, the Board was unable to consider evidence that was not presented to the Referee. (Board Decision at 3.) The Board held that, because Claimant "did not establish that her work environment was intolerable, that the write up was unwarranted, or that she made reasonable efforts to preserve her employment prior to quitting," Claimant did not meet her burden to show compelling and necessitous reasons to quit her employment. (Board Decision at 3.) Accordingly, the Board determined that Claimant was ineligible for UC

benefits pursuant to Section 402(b) of the Law.  Claimant now petitions this Court for review.[2]

On appeal to this Court, Claimant argues that the Board's conclusion that she voluntarily quit without necessitous and compelling reasons is based on insufficient, inadequate, and misleading findings of facts.  Claimant contends that the Board ignored the proffered reasons for her voluntarily termination.[3]

---

[2] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence.  Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014).

[3] Claimant also contends that the Referee's conduct during her hearings was "insouciant" and that the Referee "displayed [a] lack of interest" in her testimony.  (Claimant's Br. at 6.)  Claimant contends that, if the Referee had "listened earnestly to me rather than glancing at the clock every so often, he would not have arrived at his conclusion."  (Claimant's Br. at 6.)  We will construe Claimant's averments as an argument that she did not receive a fair hearing.  However, Claimant did not raise these concerns in her appeal to the Board.  (Claimant's Petition for Appeal from Referee's Decision/Order, Dated 10/29/2014, C.R. at Item 10.)  Issues not raised to the Board are waived for purposes of appeal.  Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 611 (Pa. Cmwlth. 2011).  Even if Claimant did not waive this argument, a close review of the hearing transcript reveals that Claimant was given a fair hearing.  "A fair hearing is provided if the right to counsel and the right to cross-examine and the right to testify freely are afforded."  Kogel v. Unemployment Compensation Board of Review, 411 A.2d 1273, 1274 (Pa. Cmwlth. 1980).  Here, the Referee gave Claimant ample time to explain the facts underlying her case, asked Claimant clarifying questions throughout her testimony that exhibited his attention to detail, and asked Claimant if she had anything else to add before closing the hearing.  Thus, "absent a showing that the referee improperly refused to admit competent and material evidence," this Court cannot hold that Claimant was not provided a fair hearing.  Lauffer v. Unemployment Compensation Board of Review, 493 A.2d 249, 251 (Pa. Cmwlth. 1981).

7

Under Section 402(b) of the Law, voluntary termination of employment renders an employee ineligible for unemployment compensation benefits unless the employee left for "cause of a necessitous and compelling nature." 43 P.S. § 802(b). "Whether a claimant has necessitous and compelling reasons for terminating her employment is a question of law subject to appellate review." Wise v. Unemployment Compensation Board of Review, 111 A.3d 1256, 1261 (Pa. Cmwlth. 2015). The claimant has the burden of proving that he or she had a necessitous and compelling cause for leaving employment. Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977). A necessitous and compelling cause "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." Id. at 832-33. A claimant has not demonstrated necessitous and compelling cause when she "has failed to take all necessary and reasonable steps to preserve the employment relationship." Nolan v. Unemployment Compensation Board of Review, 797 A.2d 1042, 1046 (Pa. Cmwlth. 2002).

In unemployment compensation cases, the Board is the ultimate factfinder and its findings "are conclusive on appeal if the record contains substantial evidence to support those findings." American General Life and Accident Insurance Company v. Unemployment Compensation Board of Review, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." Id. Although we cannot intrude on the Board's fact-finding role, we must ensure that cases are decided upon the evidence presented because an "adjudication cannot be

8

in accordance with law if it is not decided on the basis of law and facts properly adduced." Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe), 812 A.2d 478, 487 (Pa. 2002). In cases where a claimant contends that the factfinder "ignored overwhelming evidence without comment," we apply a "capricious disregard" standard. Wise, 111 A.3d at 1263. "A capricious disregard of evidence occurs where the factfinder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." Id. at 1262. We have said that capricious disregard "is just another name for the agency abusing its discretion and is an error of law when the agency fails to give an indication that it has examined countervailing substantive testimony that had to be considered at arriving at its decision." Hinkle v. City of Philadelphia, 881 A.2d 22, 27 (Pa. Cmwlth. 2005). When conducting such a review, we may not reweigh the evidence or make credibility determinations. Wise, 111 A.3d at 1263.

Applying the above principles, we conclude that the Board did not capriciously disregard competent and relevant evidence. Claimant contends that the Board disregarded her testimony that she resigned for a variety of reasons including: (1) an increase in workload that caused her stress and health concerns; (2) denial of her request to work from home; (3) insulting remarks made to her by Service Manager; and (4) Service Manager reacting to her suggestions on running the service department with condescension. The Board did not ignore this evidence without comment. The Board expressly rejected Claimant's testimony that she quit for these reasons as not credible. The Board explained that, although the record contains numerous reasons why Claimant voluntarily quit, Claimant

9

testified that "the 'straw that broke the camel's back' was when the service manager moved her books and she received a write up for insubordination." (Board Decision at 2.) In addition, Claimant did not present any evidence of health issues, such as a medical record, or documentation of her requests. As such, we conclude that the Board examined the evidence as a whole and used its discretion to determine that all of Claimant's justifications for her voluntary termination were not credible except for her testimony on the incident involving the moving of her books that resulted in her write up for insubordination.

We also conclude that substantial evidence supports the Board's findings that Claimant voluntarily quit her employment because Service Manager moved her books and she received a write up for insubordination. Claimant testified that she became upset at the meeting with Service Manager and the Human Resources representative where the incident was discussed and said, "I can't take it anymore. . . . You just don't want to listen to me. . . . I am giving you my two weeks [notice] and that's that." (Hr'g Tr. at 7.) Although Claimant's voluntary termination may have been partially motivated by wider concerns, substantial evidence supports the Board's finding that Claimant quit her employment due to the incident where Service Manager moved her books.

We now turn to the issue of whether the Board erred by holding that, because Claimant "did not establish that her work environment was intolerable, that the write up was unwarranted, or that she made reasonable efforts to preserve her employment prior to quitting," Claimant did not meet her burden to show

10

compelling and necessitous reasons to quit.  (Board Decision at 3.)  As this Court has explained:

> The law is clear.  Resentment of a reprimand, absent unjust accusations, profane language or abusive conduct; mere disappointment with wages; and personality conflicts, absent an intolerable working atmosphere, do not amount to necessitous and compelling causes.

Lynn v. Unemployment Compensation Board of Review, 427 A.2d 736, 737 (Pa. Cmwlth. 1981) (citations omitted).  Our review of Claimant's testimony reveals that the working relationship between Claimant and Service Manager appeared to be strained and that they resented each other.  (Hr'g Tr. at 10.)  However, there is no evidence that Service Manager used profanity, exhibited abusive conduct toward Claimant, or made unjust accusations against her when he attempted to communicate with her about the book incident or during the meeting with the Human Resources representative when Service Manager informed Claimant that he was going to write her up for insubordination.  As such, Claimant has not shown that her contentious relationship with Service Manager resulted in an intolerable work environment.

In addition, there is no evidence that Claimant tried to preserve her employment.  The record demonstrates that Service Manager attempted to discuss the moving of the books and opening of the glass partition with Claimant and that Claimant avoided the discussion by ignoring Service Manager's calls.  At the meeting where Claimant met with Service Manager and a Human Resources representative to discuss the incident further, Claimant gave a two-week notice after being told she was going to receive a write up as a result of ignoring Service

Manager. There is no evidence that Claimant made any effort to resolve her conflict with Service Manager or challenge the write up for insubordination before terminating her employment. Therefore, Claimant did not "take all necessary and reasonable steps to preserve the employment relationship." Nolan, 797 A.2d at 1046. Accordingly, Claimant did not meet her burden to show a necessitous and compelling reason for voluntarily quitting her employment.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Gordon,                                    :
                                                 :
                Petitioner      :
                                                 :
        v.                              :   No. 290 C.D. 2015
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :
                                                 :
             Respondent       :

## O R D E R

    **NOW**, September 3, 2015, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


                          _____
                          **RENÉE COHN JUBELIRER, Judge**