# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Schrim,                                  :
               Petitioner       :
                       :    No. 1228 C.D. 2020
             v.                 :
                       :    Submitted:  August 8, 2025
Unemployment Compensation        :
Board of Review,                                 :
               Respondent       :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

*__OPINION NOT REPORTED__*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                       **FILED:  December 15, 2025**

Michael Schrim (Claimant) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), which affirmed a Referee's decision that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (UC Law) relating to willful misconduct.[1]  Claimant seeks reversal of the Board's decision.  Upon review, we affirm.

---

[1] Section 402(e) of the UC Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing that an employee shall be ineligible for compensation when his separation from employment is due to willful misconduct connected with his work).

# I. BACKGROUND[2]

Claimant worked full-time as a licensed physical therapist for Alma Health Skilled Services (Employer). Claimant traveled to patients' residences to perform physical therapy (PT) services. On December 4, 2019, Claimant was scheduled for an 11:15 a.m. appointment but did not arrive until 11:45 a.m. because he had become lost en route. Upon Claimant's late arrival, his scheduled patient (Patient) needed to leave for another appointment to address pneumonia symptoms. Nevertheless, when Claimant returned to Employer's office, he completed a report indicating that he had performed various PT services on Patient during his visit.

On December 5, 2019, Debra Altland (Employer's chief operating officer), Melvin Wallace (Claimant's supervisor), and Nikki Slocum (Employer's director of nursing) met with Claimant to discuss the notes in his report from the prior day. At this meeting, Claimant admitted that he had not performed any PT services as indicated in his notes. Additionally, at some point in their meeting, Altland called Patient's wife to discuss Claimant's services; however, during their conversation, Claimant jumped out of his seat, hung up the phone, and proceeded to yell at his superiors.

Following the meeting, on that same day, Claimant was discharged for falsifying his report. Employer has timekeeping and recordkeeping policies that require employees to account for all their time, submit notes within 32 hours of appointments, and to notify supervisors if they are running more than five minutes late to an appointment. *See* Notes of Testimony (N.T.), 2/14/20, at E-1. Claimant was aware of these policies. *See id.* at 18.

---

[2] Except as stated otherwise, we adopt this background from the Board's decision, which is supported by substantial evidence of record. *See* Bd.'s Dec. & Order, 11/5/20.

Claimant filed for UC benefits, which were denied by the UC Service Center pursuant to Section 402(e). Claimant timely appealed, and, over several months, a Referee held three evidentiary hearings. The parties presented diametrically opposed versions of the events leading to Claimant's termination. For its part, Employer presented testimony from Altland and Wallace, whereas Claimant testified on his own behalf. Following the third hearing, the Referee affirmed the denial of benefits, concluding that Claimant's falsification of patient documents clearly rose to the level of willful misconduct. Claimant appealed to the Board, which affirmed, adopting the Referee's findings and conclusions.[3] The Board accepted Employer's version of events, resolved all conflicts in its favor, and specifically rejected Claimant's testimony that he intended to revise his PT notes.

Claimant requested but was denied reconsideration. *See* Bd.'s Resp., 12/3/2020. He then petitioned this Court for further review.

## II. ISSUES

Essentially, Claimant has raised three issues for our review, which we have reordered and rephrased as follows. Initially, Claimant challenges the manner in which the Referee conducted the third evidentiary hearing by (a) declining to sequester Employer's witnesses and (b) permitting an extensive redirect examination of Altland. *See* Pet'r's Br. at 5-6, 29-31. Second, Claimant challenges certain findings and credibility determinations of the Board. *See id.* at 5-6. Finally,

---

[3] The Board amended two findings. The Board noted that Claimant was licensed by the State and could face sanctions for falsifying documents. *See* Bd.'s Dec. & Order, 11/5/20. The Board also clarified that, while less than 24 hours had elapsed since Claimant had completed his appointment with Patient, Claimant did not indicate during his meeting with Employer on December 5, 2019, that he needed additional time to revise or complete the notes he submitted. *Id.*

3

Claimant contends that the Board erred in concluding that Claimant had engaged in willful misconduct under Section 402(e) of UC Law.[4]  *See id.* at 5.

### III. DISCUSSION[5]

### A. The Referee's Conduct of the Third Hearing

#### *1. Sequestration*

Claimant asserts that the Referee should have sequestered Employer's witnesses during the third evidentiary hearing.  *See* Pet'r's Br. at 29-30; *see also* Pet. for Rev., 12/4/20, at 6-7.  Noting that the Referee had ordered sequestration during the first two hearings, Claimant maintains that the Referee's decision against sequestration in the third hearing constitutes an abuse of discretion, an abuse further "compounded by the Board's failure to rectify this issue."  Pet'r's Br. at 30.

Pennsylvania Rule of Appellate Procedure 1551 limits the scope of our review of quasijudicial orders (such as an adjudication of the Board) to the record made before the governmental unit.  Pa.R.A.P. 1551(a).  Apart from limited exceptions, inapplicable here, "[o]nly questions raised before the government unit shall be heard or considered[.]"  *Id.*[6]  Indeed, this Court has recently reaffirmed that

---

[4] Claimant also argues that the Board "failed to preserve for appeal the issue of whether Claimant's action rose to the level of insubordination."  Pet'r's Br. at 5-6, 31.  However, the Board found willful misconduct based on Claimant's falsification of documents, not any alleged insubordination.  *See* Bd.'s Dec. & Order, 11/5/20.  Moreover, it is not the Board's burden to preserve any issues for our review.  Thus, we decline to address this issue.

[5] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated."  *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022).

[6] The Rule provides in relevant part:

> (a) Appellate jurisdiction petitions for review.--Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. Only questions raised before the government unit shall be heard or considered, except:
> (1) Questions involving the validity of a statute.

4

"an issue is waived unless it is preserved at every stage of the proceeding." *Grimwood v. Unemployment Comp. Bd. of Rev.*, 322 A.3d 976, 981 (Pa. Cmwlth. 2024) (citing *Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730, 734 (Pa. Cmwlth. 2003)); *see Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1187 (Pa. Cmwlth. 2021) (finding waiver because the claimant had not preserved an issue before the Board); *Watkins v. Unemployment Comp. Bd. of Rev.*, 751 A.2d 1224, 1226 (Pa. Cmwlth. 2000) (finding waiver because the claimant had not raised and preserved an issue before the referee).

While addressing preliminary matters at the outset of the third evidentiary hearing, the Referee acknowledged that he had previously ordered the sequestration of witnesses. N.T., 8/4/20, at 6. However, reasoning that there were far fewer witnesses scheduled to testify at the third hearing and further acknowledging that the hearing was conducted telephonically, which therefore limited his ability to monitor "who's sitting where," the Referee determined that there would be no sequestration and that he would "rely on [his] judgment" to make credibility findings. *Id.* In response, Claimant offered no objection regarding sequestration. *See id.* at 7-8 (limiting his objection to the Referee's decision to permit further testimony from Altland), 49-50 (closing remarks from Claimant's

---

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions that the court is satisfied the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be raised, it shall remand the record to the government unit for further consideration of the additional question.

The court may in any case remand the record to the government unit for further proceedings if the court deems them necessary.

Pa.R.A.P. 1551(a).

counsel that do not address sequestration). Therefore, Claimant failed to preserve this issue before the Referee.

Additionally, in his timely appeal from the Referee's decision, Claimant submitted a detailed critique of the Referee's findings and credibility determinations, alleged discrepancies and contradictions in Employer's evidence, and arguably renewed his objection to any further testimony from Altland. *See* Claimant's Pet. for Appeal from Ref.'s Decision, 8/31/20.[7] However, absent from this document is any challenge to the Referee's sequestration decision. *See id.* Additionally, Claimant did not raise or preserve this issue in his request for reconsideration. *See* Claimant's Req. for Recons., 11/24/20. Therefore, Claimant did not preserve this issue before the Board.

For these reasons, and notwithstanding Claimant's identification of this issue in his petition to this Court, Claimant's challenge to the Referee's sequestration decision is clearly waived.[8] *Grimwood*, 322 A.3d at 981; *Hubbard*, 252 A.3d at 1187; *Watkins*, 751 A.2d at 1226; Pa.R.A.P. 1551(a).

---

[7] Claimant's petition to appeal from the Referee's decision is lengthy. His specific assertions of error can be found in the certified record at CR 284 – CR 305.

[8] Absent waiver, Claimant's assertion lacks merit. In support, Claimant cites Pennsylvania Rule of Evidence 615, which permits but does not require witness sequestration, and a criminal case. Pet'r's Br. at 29 (citing Pa.R.E. 615 and *Commonwealth v. Stevenson*, 894 A.2d 759 (Pa. Super. 2016)). We note, however, that Commonwealth agencies are not bound by technical rules of evidence at agency hearings. 2 Pa.C.S. § 505. Further, this Court has declined to establish a sequestration requirement for unemployment compensation hearings because "[s]uch a requirement has no basis in law[] and would alter the well-settled rule that sequestration of witnesses is a matter not of right, but of discretion of the trial judge." *Hussar v. Unemployment Comp. Bd. of Rev.*, 432 A.2d 643, 645 (Pa. Cmwlth. 1981).

Moreover, Claimant's reliance on *Stevenson* is misplaced, as the Superior Court stressed that "an appellant must demonstrate that he or she was *actually* prejudiced by a trial judge's sequestration order before any relief may be warranted." *Stevenson*, 894 A.2d at 767 (emphasis added) (rejecting the appellant's claim because he failed to establish *how* he had been prejudiced).

6

## 2. Additional Testimony from Altland

Claimant concedes that the scope of redirect examination is left to the Referee's discretion but challenges the Referee's decision to "permit[] Employer to redo almost the entirety of [Altland's] testimony" from the first evidentiary hearing. Pet'r's Br. at 30. No relief is due.

Our Supreme Court has recognized that referees, while not imbued with the same power as a trial court, are nonetheless "authorized to regulate the course of hearings and to take other action necessary or appropriate to the discharge of the duties vested in them." *Powell v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 884, 893 n.11 (Pa. 2017); *see also* 34 Pa.Code § 101.21(b) ("Within the discretion of the tribunal, the parties shall be permitted to present evidence and testimony which they believe is necessary to establish their rights.").

In this case, the first evidentiary hearing ended prematurely. *See* N.T., 2/14/20, at 28-34. Altland provided testimony, *see id.* at 9-28, but then the Referee needed to continue the hearing because of a scheduling conflict. *Id.* at 28-34. At this first hearing, unbeknownst to the Referee, Claimant's former counsel recorded Altland's testimony. *See* N.T., 3/3/20, at 4.

At the outset of the second hearing, Claimant insisted that the cross-examination of Altland had not been completed. *Id.* at 3. Prior to his questioning of Altland, substitute counsel[9] asked the Referee whether he could record the

---

Here, Claimant has not asserted or demonstrated prejudice in this case but merely suggests that "virtually identical" testimony from Employer's witnesses "could have unfairly prejudiced Claimant." Pet'r's Br. at 29; *but see* Claimant's Pet. for Appeal from Ref.'s Dec., 8/31/20 (alleging Referee's inability to recognize blatant contradictions in Employer's evidence).

[9] Claimant was initially represented by Attorney Corey Adamson. N.T., 2/14/20, at 1. Attorney Adamson did not appear at the second hearing; rather, Claimant was represented by Attorney Brian Platt. N.T., 3/3/20, at 1. In this Court, Claimant is represented by Attorney John C. Porter. *See* Pet. for Rev.; Pet'r's Br.

proceedings. *Id.* This request was denied, and, at this point, the existence of the prior recording was revealed. *Id.* at 3-4. Substitute counsel also acknowledged that he had listened to this unauthorized recording. *Id.* at 5-6. The Referee admonished substitute counsel and granted Employer's request to reschedule the hearing so its attorney could be present.[10] *Id.* at 5-10. Additionally, the Referee determined to provide both parties with a transcript of the proceedings "because what [former] counsel did the last time was totally unfair" and placed Altland at a disadvantage. *Id.* at 9.

Some months later, at the beginning of the third evidentiary hearing, counsel for Employer[11] requested leave to question Altland a "bit more extensive[ly] than a typical redirect . . . ." N.T., 8/4/20, at 7. The Referee granted this request, suggesting that he would not permit extensive new testimony but only what was necessary to complete the record. *Id.* Although the Referee recognized Claimant's ongoing objection to any further testimony from Altland, the Referee also expressly agreed that Claimant could lodge a further, specific objection if Altland's redirect testimony went beyond the scope of her prior testimony. *See id.* at 11. Following her redirect, counsel for Claimant then re-cross-examined Altland. *See id.* at 19-21.

With this context, it is clear that the Referee took appropriate action to ensure fair and orderly proceedings. Thus, we discern no abuse of the Referee's discretion in permitting additional testimony from Altland. *See Powell,* 157 A.3d at 893 n.11; 34 Pa.Code § 101.21(b).

---

[10] Altland appeared at the first two hearings without the benefit of counsel. *See* N.T., 2/14/20, at 1; N.T., 3/3/20, at 1. Upon learning that the illicit recording of the first hearing was not permitted, Altland expressed her discomfort and requested the continuance so Employer's attorney could be present. N.T., 3/3/20, at 5.

[11] Attorney Wendell Courtney appeared on behalf of Employer. N.T., 8/4/20, at 1.

## B. The Board's Findings and Credibility Determinations

Claimant challenges certain findings and credibility determinations of the Board, asserting that the Board capriciously disregarded evidence that undermined Employer's version of the events leading to Claimant's termination. *See* Pet'r's Br. at 21-29. Principally, summarizing his own testimony, Claimant insists that he informed Employer that his report was incomplete, and although he attempted to revise his notes and had additional time to do so, Employer dismissed Claimant from the workplace premises before he could complete his revisions.[12] *See* Pet'r's Br. at 21-23.

It is well established that the Board is the ultimate factfinder, entitled to make its own determinations on evidentiary weight and witness credibility, and is free to accept or reject the testimony of any witness, in whole or in part. *Cambria Cnty. Transit Auth. v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (*CCTA*). Further, the Board's credibility determinations are not subject to judicial review provided they are based on substantial evidence, even if there is contrary evidence of record. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 136 (Pa. Cmwlth. 2022).

---

[12] The Referee found that "[a]lthough the claimant was allotted an additional eight hours to complete his notes, 32 instead of 24, the claimant did not advise the employer that he needed to make any changes to the notes to make them accurate." Ref.'s Dec., 8/14/20, Finding of Fact No. 15. The Board clarified this finding "to reflect that, while less than 24 hours had elapsed since [Claimant] completed his appointment with [Patient], during the December 5, 2019 meeting with [Employer], he did not indicate that he required any additional time to revise or complete the note he submitted." Bd.'s Dec. & Order at 1.

9

Additionally, this Court is bound to view the record "in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony." *CCTA*, 201 A.3d at 947. It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is substantial evidence in the record to support the findings actually made[.]" *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015).

"A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Id.* Provided there is substantial evidence to support an agency's findings and those findings support the agency's legal conclusions, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe),* 812 A.2d 478, 487 n.14 (Pa. 2002). This Court will disturb an agency's adjudication for a capricious disregard of evidence only if the agency has expressly refused to resolve conflicts in the evidence and make essential credibility determinations or where the agency has completely ignored overwhelming evidence without comment. *See Wise*, 111 A.3d at 1262; *Hinkle v. City of Phila.*, 881 A.2d 22, 26-27 (Pa. Cmwlth. 2005).

Clearly, in this case, the parties presented very different versions of the events leading to Claimant's discharge from employment. The Referee recognized this, observing that the parties' explanations "are exactly the opposite." Ref.'s Dec., 8/14/20, at 3 (unpaginated). Nevertheless, upon reviewing the evidence, the Board

credited Employer's version of events and "resolve[d] all conflicts in the evidence in its favor." Bd.'s Dec. & Order, 11/5/20, at 1. Further, the Board explicitly "[declined to] credit [Claimant's] testimony that he intended to revise the note in which he misrepresented the work he performed with Patient[.]" *Id.*

We acknowledge that Claimant contends that Altland's recollection of events supports his assertion that Claimant had requested additional time to revise his notes. *See* Pet'r's Br. at 22 (suggesting that Altland admitted to Claimant's request). Frankly, however, this contention is devoid of merit.

Altland testified that Claimant had completed his notes on December 4, 2019. N.T., 2/14/20, at 15; *see also* N.T., 8/4/20, at 27-28, 34 (Claimant testifying that his submitted report was accurate). This is, in part, what prompted the December 5th meeting. *See* N.T., 8/4/20, at 14-15 (Altland testifying that she was concerned by Claimant's notes from December 4th), 22-23 (Wallace corroborating this testimony). In describing the sequence of events that occurred on December 5, 2019, Altland testified that the meeting ended abruptly when Claimant began screaming and hung up the phone on Patient's wife. *See id.* at 10-14; *see also* N.T., 8/4/20, at 17. At this point, according to Altland, she directed Claimant to leave the work premises immediately because she had determined to terminate his employment, but he did not. *See* N.T., 2/14/20, at 10-14; N.T., 8/4/20, at 17-18. Rather, according to Altland, "[Claimant] went to sit at his desk and told [Altland] he was going to finish completing his notes." N.T., 2/14/20, at 14; *see also* N.T., 8/4/20, at 18.

In this case, the Board resolved conflicts in the evidence in Employer's favor and explicitly rejected Claimant's version of the events leading to his termination from employment. Additionally, per Altland's testimony, Claimant did

11

not attempt to revise his PT notes until *after* he was confronted with their inaccuracies, the meeting had ended, and he was directed to leave. For these reasons, we discern no capricious disregard of evidence in this case.[13] *See Wise*, 111 A.3d at 1262; *Hinkle*, 881 A.2d at 26-27.

## C. Claimant's Willful Misconduct

Finally, Claimant asserts that Employer failed to prove his willful misconduct. Pet'r's Br. at 19. Claimant argues that Employer's policy required that PT notes were due within 36 hours of service, but that Employer terminated Claimant's employment approximately 24 hours after his appointment with Patient. *See* Pet'r's Br. at 19-21. Thus, in his view, Claimant was terminated prematurely

---

[13] Claimant has also identified inconsistencies in the documentation submitted by Employer describing the reasons for its termination of Claimant's employment. *See* Pet'r's Br. at 23-25. During these proceedings, it is true that Employer listed several reasons justifying Claimant's termination, including criminal conduct, willful misconduct, rule violation, and insubordination. *See, e.g.*, Emp.'s Separation Info., 12/18/19, at 4; Emp.'s Questionnaire, 12/23/19, at 1; Emp.'s Questionnaire, 1/3/20, at 1. Ultimately, however, the Board credited evidence supporting Employer's position that Claimant had violated Employer's policy against the falsification of records. Therefore, it is simply irrelevant that Employer may have alleged other reasons for terminating Claimant's employment. We note further that Claimant testified that he was discharged "for a rule violation." N.T., 2/14/20, at 8.

Claimant points to additional inconsistencies in Altland's testimony, which we decline to address in detail. *See* Pet'r's Br. at 25-27. Briefly, for example, Altland testified at a preliminary hearing on criminal charges brought against Claimant that she intended to terminate Claimant's employment at the December 5th meeting, whereas she later testified at the first evidentiary hearing in this matter that she would discipline and *possibly* terminate Claimant's employment. *Compare* N.T., 2/14/20, Ex. C-1 (N.T. Prelim. Hr'g, 12/18/19, at 5), *with* N.T., 2/14/20, at 10-11. Altland conceded this discrepancy, *see* N.T., 2/14/20, at 23, but later testified on redirect that, after Claimant's conduct at the December 5th meeting, she determined to terminate Claimant's employment. In any event, the salient question before the Board was whether the evidence established Claimant's willful misconduct; thus, Claimant's focus on Altland's intentions regarding the December 5th meeting is also irrelevant.

and did not violate Employer's policy prohibiting the falsification of patient records.[14]  *See id.*

The burden of proving misconduct rests with the employer.  *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012).  If the allegation of willful misconduct is based on a claimant's violation of the employer's work rule, the employer must establish the existence of the rule, its reasonableness, and the claimant's violation of the rule.  *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017).  Moreover, this Court has long recognized that "a knowing falsehood or misrepresentation to the employer concerning the employee's work constitutes a willful disregard of the employer's interest and a departure from the standards of behavior an employer can rightfully expect of an employee, and therefore is willful misconduct . . . ."  *Smith v. Unemployment Comp. Bd. of Rev.*, 411 A.2d 280, 281 (Pa. Cmwlth. 1980).  It is settled that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court."  *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).

Claimant does not challenge the existence of Employer's workplace policy prohibiting the falsification of patient records or its reasonableness but instead maintains that he did not violate the policy.  Nevertheless, the credited facts establish that Claimant completed and submitted a report documenting that he had performed

---

[14] In support, Claimant cites cases in which this Court has concluded there was no willful misconduct because an employer tolerated violations of its workplace policies.  *See* Pet'r's Br. at 20 (citing *Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532 (Pa. Cmwlth. 2016) (company tolerated violations of its internet use policy and, therefore, employee's internet use did not amount to willful misconduct), and *Penn Photomounts, Inc. v. Unemployment Comp. Bd. of Rev.*, 417 A.2d 1311 (Pa. Cmwlth. 1980) (company did not adhere to its formal leave policy and, therefore, employee's informal reporting was accepted practice).  These cases are inapposite.  There is no evidence here that Employer tolerated untimely or inaccurate PT notes.

PT services for Patient. *See* N.T., 2/14/20, at 14-15; N.T., 8/4/20, at 43-44, Ex. E-3 (Phys. Therapy Note). And yet, Claimant later admitted that he had not performed these services. N.T., 8/4/20, at 15-16, 22-23. This constitutes substantial evidence that Claimant violated Employer's policy and, further, committed a knowing misrepresentation to Employer concerning Claimant's work. *Waverly Heights, Ltd.*, 173 A.3d at 1228; *Smith*, 411 A.2d at 281.

Moreover, absent credited evidence that Claimant's report was incomplete or that he had requested additional time to revise his PT notes, Claimant's argument that he did not violate Employer's policy because it permitted him another 12 hours to submit a complete and accurate report of his PT services is simply not persuasive. In this regard, it is significant that Claimant was repeatedly unable to identify sections in his report that needed revision. *See* N.T., 8/4/20, at 44-48.

Therefore, we conclude that Claimant's conduct constitutes willful misconduct. *Brown*, 49 A.3d at 937; Section 402(e) of UC Law, 43 P.S. § 802(e).

## IV. CONCLUSION

Claimant's challenges to the Referee's conduct of the third evidentiary hearing are waived or otherwise without merit. Further, we discern no capricious disregard of evidence favorable to Claimant. Finally, Employer established by substantial evidence Claimant's willful misconduct. Accordingly, we affirm the Board's decision that Claimant is ineligible for UC benefits.

**LORI A. DUMAS, Judge**

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Schrim,                          :
          Petitioner              :
                         :   No. 1228 C.D. 2020
          v.                         :
                         :
Unemployment Compensation                :
Board of Review,                         :
          Respondent              :

## O R D E R

AND NOW, this 15th day of December, 2025, the order of the Unemployment Compensation Board of Review, entered November 5, 2020, is AFFIRMED.

**LORI A. DUMAS, Judge**