IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khadijah Husain,                :

          Petitioner       :

                          : No. 1484 C.D. 2016

          v.               :

                          : Submitted: February 10, 2017

Workers' Compensation Appeal  :

Board (AMN Healthcare, Inc.),   :

          Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: July 31, 2017

Khadijah Husain (Claimant) petitions for review of the August 10, 2016, order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying her review petition and granting the termination petition of AMN Healthcare, Inc. (Employer).

**Facts and Procedural History**

Claimant was working for Employer as a nursing assistant on October 16, 2013, when she was injured after a patient rolled a wheelchair over Claimant's left foot. Claimant consulted a Dr. Liebenberg, who removed her from work. Claimant has not worked since October 16, 2013. (WCJ's Findings of Fact Nos. 1b-c; Reproduced Record (R.R.) at 17, 36-37.) Employer accepted liability for a

"left foot contusion" work injury through a notice of compensation payable (NCP) dated October 30, 2013. (WCJ's Procedural History and Findings of Fact Nos. 1a-b.)

On June 3, 2014, Employer filed a termination petition alleging full recovery from the accepted work injury as of March 24, 2014. Claimant filed a timely answer denying all allegations. On November 25, 2014, Claimant filed a review petition alleging that the description of the work injury was incorrect and should include complex regional pain syndrome (CRPS). Employer filed a timely answer denying all material allegations. *Id.* The WCJ consolidated the proceedings at a hearing. (R.R. at 39.)

Claimant testified at a hearing on February 2, 2015. She testified that she began working for Employer in May of 2013. She stated that, as of the date of injury, she worked as a nursing assistant for another employer, Kennedy Hospital, and that both jobs involved patient care, which included transporting, cleaning, lifting, feeding, and bathing patients. Both jobs required her to be on her feet the entire time she worked. (WCJ's Finding of Fact No. 1a.)

After she was injured on October 16, 2013, Claimant testified that she sought immediate treatment at Albert Einstein Medical Center. She then began treatment with Dr. Liebenberg, who she said prescribed medication. When Dr. Liebenberg retired, Claimant testified that she was referred to Anthony Ndu, M.D., "who told her there was nothing wrong with her foot and that she may have a nerve problem . . . ." (WCJ's Finding of Fact No. 1c.) She then began treatment with Wen Chau, M.D., who Claimant testified kept her off work, prescribed medications and the use of a walker, and referred her to physical therapy. She testified that, because she was making no progress, she was referred to a pain management physician, and then underwent an EMG/nerve conduction study. At

2

some point, it was recommended that Claimant receive injections. (WCJ's Findings of Fact Nos. 1c-d.)

Claimant testified that she began treating with Venk Sundararajan, M.D., in October of 2014. She stated that Dr. Sundararajan recommended injections, which she had previously declined. She testified that she subsequently underwent three injections at Abington Surgical Center but that each injection only helped for the first day or two. She testified that Dr. Sundararajan recommended IV therapy, a bone scan, and pain medication. She noted that her left foot pain has increased, the pain now radiates, and she experiences a pins-and-needles sensation. She described her pain as a level 7 or 8 out of 10 on a regular basis. She testified that her foot is swollen and prevents her from performing her activities of daily living and that she cannot wear a regular shoe on her left foot. She is able to drive, and drives her children to and from school every day. She does not feel she is fully recovered from the 2013 work injury. (WCJ's Findings of Fact Nos. 1c-i.)

Claimant testified that, prior to the work injury, she had problems with her left foot, and had been treated at the Rothman Institute for years. She testified that she had a mass removed from her left foot in July of 2013 and was out of work from July to September of 2013, at which point she returned to her jobs with Employer and Kennedy Hospital. (WCJ's Finding of Fact No. 1j.)

In a deposition taken on January 7, 2015, Claimant submitted the medical testimony of Dr. Sundararajan. Board-certified in pain management and anesthesiology, Dr. Sundararajan testified that he is licensed to practice medicine in Pennsylvania but does not perform invasive surgeries. Dr. Sundararajan testified that he began treating Claimant on October 30, 2014. He testified that he obtained a history from Claimant, who complained of throbbing pain in her left foot, rating it at 8 on a scale of 0-10. He stated that she also complained of

3

numbness and tingling, which increased with standing and touch. He testified that she told him the symptoms abated somewhat with elevation of the left foot and medication. (WCJ's Finding of Fact No. 2.)

Dr. Sundararajan's examination revealed swelling in the front dorsum of her left foot and that Claimant exhibited decreased plantar and dorsal flexion strength, decreased range of motion, pain with light touch over the top of her left foot, and increased sensitivity. He stated that an MRI of December 31, 2013, revealed no specific injury or pathology. Based on his physical examination and his review of Claimant's medical records from Drs. Liebenberg, Ndu, and Chau, Dr. Sundararajan testified that Claimant suffers from CRPS and that, because Claimant had a painful event (the work injury), with immobilization, disproportionate pain, edema, motor changes, and no other injury, she suffers from Type 1 CRPS, known as reflex sympathetic dystrophy (RSD). Dr. Sundararajan explained that Claimant's disproportionate pain did not constitute symptom magnification because Claimant's examinations have been consistent. (WCJ's Finding of Fact No. 2.)

Further, he testified that Claimant's October 2, 2014, EMG was consistent with CRPS because it indicated left peroneal sensory and distal latency amplitude in comparison with her right foot. Subsequently, Dr. Sundararajan testified that he referred Claimant for desensitization therapy, which included nerve sympathetic blocks and physical therapy. He stated that Claimant underwent the blocks on November 7 and 14, 2014, but that she did not receive long-term pain relief and reported increased pain after one block. Dr. Sundararajan testified that although a bone scan performed on December 3, 2014, did not show one of the indicators of CRPS (increased uptake), the bone scan is not a definitive diagnostic

4

test and, indeed, there is no definitive diagnostic test for CRPS. (WCJ's Finding of Fact No. 2.)

Accordingly, Dr. Sundararajan testified that he prescribed muscle relaxers and narcotic pain medication, and that he believed that Claimant would improve slowly with continued physical therapy. He testified that Claimant would always have difficulty standing and walking until her pain subsides or resolves, and that, although she was capable of performing a sedentary or desk job, she was not capable of working full-time at her pre-injury job. He concluded that she was not fully recovered from her 2013 work injury and continued to suffer from CRPS. Dr. Sundararajan testified that he was aware of Claimant's prior problems with her left foot, including the surgery to remove the mass on her left foot. Because the mass was on the other side of that foot and the records from Claimant's prior problems revealed no evidence of CRPS, he testified that it had no bearing on her disability since October 3, 2013. (WCJ's Finding of Fact No. 2.)

Before the WCJ, Claimant also submitted a packet of prescription slips and bills, which was admitted into evidence as Claimant's exhibit 2. (WCJ's Finding of Fact No. 3.)

In a deposition taken on September 10, 2014, Employer offered the expert testimony of Steven Boc, D.P.M. Dr. Boc is a licensed podiatrist in Pennsylvania and he testified that he is board-certified in foot and ankle surgery. He examined Claimant at the request of Employer on March 24, 2014. He testified that when he obtained a history from Claimant, she complained of pain in her left midfoot in the area of the first metatarsal and second and third toes, as well as tingling in her forefoot. Dr. Boc testified that he performed a physical examination which revealed normal vascular status, present hair, and normal temperature in both feet. He also testified as to a lack of any dermatological or orthopedic

5

findings. Dr. Boc noted that these specific normal findings point to "no inflammatory response going on." (R.R. at 110.) He stated he found no swelling in either ankle but that Claimant had hammer-toe deformities bilaterally in her third, fourth, and fifth toes. He testified that he found Claimant was flat-footed in both feet and that she could not perform toe raises because of that. He stated he found no swelling, atrophy, allodynia, or hypersensitivity in either leg. Dr. Boc testified that Claimant complained of pain on palpation of the left hallux and second and third toes as well as decreased sensitivity and burning in her left foot. (WCJ's Finding of Fact No. 4.)

In advance of the examination, Dr. Boc testified that he reviewed x-rays (which showed no evidence of fracture or dislocation), MRI films (which showed some marrow edema to the left first metatarsal bone but no fracture), Dr. Chau's records (in which Dr. Chau saw a stress fracture on the MRI but Dr. Boc did not), and records from Drs. Ndu, Liebenberg, the Rothman Institute, and other physicians (indicating prior treatment of the left foot, which were not consistent with Claimant's statement that she had recovered from left foot problems prior to October 16, 2013). The films and records were consistent with a bone contusion, according to Dr. Boc. He diagnosed Claimant with a fully resolved foot contusion, and stated that there was no other pathology in the left foot. He believed she required no additional medical treatment or restriction and that she could return to work without limitation related to the 2013 work injury. (WCJ's Finding of Fact No. 4.)

The WCJ found Claimant's testimony to have been credible in part and not credible in other respects. He found her description of the occurrence of the injury to have been consistent with the medical evidence of record. However, with respect to Claimant's ongoing complaints and their relation to the 2013 work

6

injury, the WCJ assessed Claimant's live testimony and found her not credible. In this regard, the WCJ credited the testimony of Dr. Boc. The WCJ concluded that:

> While this Judge did view Claimant's feet and the left appeared more swollen than the right, this Judge finds Claimant's testimony not credible where same conflicts with the testimony of Dr. Boc, a medical expert. This Judge bases these determinations, in part, upon his observation of Claimant's deportment and demeanor.

(WCJ's Finding of Fact No. 5.)

Further, the WCJ found Dr. Boc more credible than Dr. Sundararajan. The WCJ noted that Dr. Boc examined Claimant seven months before Dr. Sundararajan's first treatment of Claimant, which was also more than a year after the work injury. "As such, this Judge does not afford Dr. Sundararajan any additional or enhanced credibility as may exist with an initial treating physician." (WCJ's Finding of Fact No. 6.) Moreover, the WCJ found Dr. Boc's assessment to have been "credible, convincing, and cogent," as well as being more consistent with the medical records and films than was the testimony of Dr. Sundararajan. The WCJ explained as follows:

> Dr. Sundararajan failed to persuasively explain any additional information or adequately correlate same to objective, clinical presentation, beyond Claimant's swelling. The only consistent basis, beyond the swelling, for such diagnosis is Claimant's subjective complaints of hypersensitivity. Both of these findings, swelling and hypersensitivity, were present in some regard prior to the work injury. Dr. Boc persuasively explained Claimant's condition both before and after the work injury, despite Claimant's lack of forthrightness in her history to him. Dr. Sundararajan diagnosed Claimant with CRPS, despite a normal bone scan and ineffective sympathetic blocks, by later indicating that same were not effective in or critical to the diagnostic process. The only positive diagnostic study supporting Dr. Sundararajan's diagnosis, by [his] own account, is the EMG, which this Judge

7

rejects as inconsistent and insufficient when the medical record is taken as a whole. This Judge finds Dr. Sundararajan's reasoning and opinions regarding the presence and relatedness of CRPS not credible and rejects same. Dr. Boc's testimony is accepted in its entirety.

(WCJ's Finding of Fact No. 6.)

Accordingly, the WCJ denied Claimant's review petition, finding that she failed to prove that she suffered an additional injury of CRPS, and granted Employer's termination petition, finding that Employer had proven a full recovery, effective March 24, 2014. (WCJ's Findings of Fact Nos. 7-8; Conclusions of Law Nos. 2-3).

Claimant appealed to the Board, arguing that the WCJ capriciously disregarded evidence concerning both petitions and that the WCJ's decision was not reasoned as required by statute.[1] The Board affirmed the WCJ, finding that "[a] WCJ's express consideration and rejection of evidence is not capricious disregard." (Board op. at 3) (citations omitted). The Board also rejected Claimant's argument that the WCJ's decision was not reasoned, holding that "[t]he WCJ articulated an objective basis for credibility determinations concerning the medical evidence . . . ." (Board op. at 6) (citations omitted).

Claimant filed a petition for review with this Court,[2] raising the same arguments she raised with the Board.[3] For the reasons that follow, we affirm.

_____

[1] Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

[2] Our scope of review is limited to determining whether Findings of Fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006). If raised by a party, allegations of capricious disregard must be addressed by the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board*
**(Footnote continued on next page…)**

## Discussion

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

---

**(continued…)**

*(Marlowe)*, 812 A.2d 478, 487-88 (Pa. 2002). Under this Court's analysis in *Williams v. Workers' Compensation Appeal Board (USX Corporation—Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004), "an express consideration and rejection of evidence, by definition, is not capricious disregard."

[3] By order dated December 27, 2016, this Court directed Employer to file its brief within 14 days of the date of the order. Employed did not comply. Hence, by order dated February 3, 2017, Employer was precluded from filing a brief in this matter.

9

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v. Workers' Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

A petition to review which seeks to modify an NCP to add an injury or body part not previously accepted by the employer functions as, and carries the same burdens of proof as, a claim petition. *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 592 (Pa. 2005). A petition for termination carries a heavy burden on the employer to establish that a claimant has fully recovered from the work injury. *GA and FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087, 1091 (Pa. Cmwlth. 2001); *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993).

In the present case, the WCJ chose to believe Claimant only in part, *i.e.*, Claimant sustained a work injury to her left foot on October 16, 2013. Nonetheless, the WCJ found Claimant's testimony regarding her ongoing complaints and present condition not credible because it was not consistent, in large part, with the records and diagnostic testing she had undergone, in addition to Claimant having been less than forthright regarding the recent, pre-work-injury problems with her left foot. (WCJ's Finding of Fact No. 5.) The WCJ also chose to credit Dr. Boc over Dr. Sundararajan. As noted above, Dr. Boc testified about the limited nature of Claimant's work injury, explaining cogently Claimant's condition both before and after the work injury. (WCJ's Finding of Fact No. 6.)

Accordingly, there was substantial evidence to support the WCJ's denial of the review petition because Claimant never established work-related

10

CRPS, and there was substantial evidence to support granting the termination petition because the WCJ found a full recovery from the 2013 work injury when he chose to believe one expert witness over another.

Contrary to Claimant's argument, the WCJ did not capriciously disregard the evidence. While Claimant suggests there was overwhelming evidence in her favor, we are constrained on appeal to considering whether substantial evidence supports the WCJ's findings. *Berardelli*, 578 A.2d at 1018. Moreover, "capricious disregard" only occurs where the WCJ fails to explain how he examined contrary substantive evidence which "had to be considered at arriving at [his] decision." *See*, *Hinkle v. City of Philadelphia,* 881 A.2d 22, 27 (Pa. Cmwlth. 2005). Such was not the case here, where the WCJ examined, discussed, explained, evaluated, and assessed all the evidence before him, both documentary evidence and testimony. Ultimately, however, the WCJ credited Employer's evidence as to the lack of any new condition and did not credit Claimant's testimony regarding ongoing complaints of pain. Put simply, the WCJ exercised appropriate discretion and did not capriciously disregard any evidence.

In a related vein, the WCJ's exhaustive evaluation of the evidence clearly indicates that the WCJ issued a "reasoned decision," as required by section 422 of the Act. Section 422(a) reads, in pertinent part, that:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. . . .When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for accepting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must

> identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

Our Supreme Court has held that a decision is reasoned "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under appellate review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). The WCJ here had the opportunity to observe and evaluate Claimant's demeanor, and for the expert testimony by deposition, he offered an extended analysis of why he found Dr. Boc more credible than Dr. Sundararajan. As such, the Board acted correctly when it affirmed the WCJ on the grounds that he had issued a reasoned decision consistent with the mandate of section 422(a).

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khadijah Husain, :
          Petitioner :
           : No. 1484 C.D. 2016
          v. :
           :
Workers' Compensation Appeal :
Board (AMN Healthcare, Inc.), :
          Respondent :

## _**ORDER**_

AND NOW, this 31st day of July, 2017, the order of the Workers' Compensation Appeal Board, dated August 10, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge