IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of BSD Construction,   :   CASES CONSOLIDATED
LLC   :
  :   Nos. 1077 & 1078 C.D. 2024
Appeal of:  BSD Construction, LLC   :   Submitted:  November 6, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE LORI A. DUMAS, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER    FILED:  December 18, 2025


In these consolidated appeals, BSD Construction, LLC (BSD) seeks review of Orders of the Court of Common Pleas of Philadelphia County (common pleas), which affirmed decisions by the Board of License and Inspection Review (Board).[1] The Board affirmed two License Violation Notices (LVNs) for violations of the Philadelphia Code (Code)[2] that the City of Philadelphia's (City) Department of Licenses and Inspections (L&I) issued to BSD following an audit of its jobsites.  On appeal, BSD argues the Board improperly placed the burden of proof on BSD instead of the City, there is not substantial evidence to support the Board's findings, and one provision of the Code which BSD was found to violate is not applicable to the jobsites in question.  Upon review, we conclude BSD waived its first and third issues

---

[1] Common pleas issued two identical orders on August 2, 2024, from which BSD appeals. Each appeal deals with violations at a separate job site.

[2] PHILA., PA., CODE §§ 1-101–22-1409 (2024).

by not raising them at the earliest opportunity before common pleas. As to BSD's second issue, which was properly preserved, we conclude there was substantial evidence to support some of the Board's findings, but not others. Accordingly, we reverse in part and affirm in part.

## I.    BACKGROUND

BSD was the general contractor for two projects in the City:  513 North 63rd Street (Site A) and 228 North 63rd Street (Site B).  (Commercial Buildings Permits, Reproduced Record (R.R.) at 22a, 37a.)  In February 2023, L&I conducted an audit of the two sites and, as a result of that audit, issued two LVNs.  At Site A, BSD was cited once for each of five workers who were not carrying cards evidencing that they completed a course in Occupational Safety and Health Administration (OSHA) 10 training at all times, once for not having a safety manager with OSHA 30 training present; and once for having no licensed contractors/subcontractors on site.[3]  (Site A LVN, R.R. at 53a-54a.)  BSD was fined $1,000 for each violation, for a total of $7,000.  (*Id.*)  L&I cited BSD for identical violations at Site B, except there were four workers not carrying OSHA 10 cards at that site.  (Site B LVN, R.R. at 24a-25a.)  The total fine for violations at Site B was $6,000.  (*Id.*)

---

[3] Section 9-1004(6)(f) of the Code provides "[c]ontractors shall comply with all provisions of [t]he [ ] Code."  CODE § 9-1004(6)(f).  Section A-1001.4 provides, in relevant part, that "all workers performing duties at a construction or demolition site, regardless of their position, shall have completed a course of OSHA 10 training, and carry the card at all times."  CODE § A-1001.4. Section A-1001.5-A provides that "[a] site safety manager with OSHA 30 training must be designated by the general contractor and present during the construction or demolition of a Major Building," which, in turn, is defined as "[a] building that is either:  1. More than 3 stories in height; or 2.  More than 40 feet . . . in height; or 3.  Covers 10,000 square feet . . . or more of lot space, regardless of height."  CODE §§ A-1001.5-a, A-1001.1.  Section 9-1004(7)(f) provides that "[n]o contractor shall employ an unlicensed subcontractor to perform any activity regulated under this Section."  CODE § 9-1004(7)(f).

BSD appealed both LVNs to the Board. (Appeal Applications, R.R. at 39a (Site B), 52a (Site A).) A Zoom hearing was held on September 14, 2023.[4] At the hearing, Jose Ramos, an L&I inspector (Inspector), testified on behalf of the City. Inspector testified that at Site A, Inspector observed five men eating lunch in a van. (R.R. at 77a.) When asked if Inspector confirmed they were working at Site A, Inspector responded, "Yes. They were working there." (*Id.* at 78a; *see also id.* at 83a (testifying "the gentleman told me they were working in that property"), 85a (same).) Inspector testified he asked for identification and OSHA cards but none were provided. (*Id.* at 78a, 89a.) There was also no safety manager on site, which Inspector stated is required for "[a]nything over capacity of a commercial building permit." (*Id.* at 74a, 78a.) On cross-examination, Inspector acknowledged that he did not see any of the men working in the house at Site A. (*Id.* at 84a-85a.) Inspector did not know if the men worked for BSD or were subcontractors. (*Id.* at 86a.) Inspector explained that if they were employed by a subcontractor, BSD had to provide a subcontractor list, which it did not. (*Id.* at 86a-87a.) Inspector testified no one from BSD contacted him after the LVNs were issued. (*Id.* at 89a-91a.)

Lionel Love, BSD's owner (Owner), testified he lives approximately one and a half miles from Site A and visited the jobsite daily. (*Id.* at 95a.) Owner testified he uploaded a list of subcontractors as required. (*Id.* at 95a, 97a.) Owner also testified all of his contractors had the required OSHA cards, as a card is required to be licensed and he only employs those with licenses. (*Id.* at 96a-97a.)

As to Site B, Inspector testified that he observed four men eating lunch on the second floor of the building, none of whom identified themselves or provided OSHA cards. (*Id.* at 104a, 106a.) Inspector also testified there was no safety manager on

---

[4] A transcript of the hearing is in the Reproduced Record beginning at page 65a. At the hearing, evidence was first presented as to Site A, and then evidence was presented as to Site B.

site. (*Id.* at 106a, 108a.) BSD's counsel objected to this testimony on the basis that an OSHA 30 card is not needed if the property is only two stories high, and the Board chairman advised him that he could refute that through cross-examination or in his own case-in-chief. (*Id.* at 107a.) Following this objection, Inspector testified the site is three stories, which he stated was evidenced by the photographs also introduced. (*Id.*) Following the issuance of the LVN, Inspector testified no one from BSD contacted him. (*Id.* at 108a.) On cross-examination, when asked if he checked the system to determine if any of the contractors were registered, Inspector responded he did not. (*Id.* at 109a-10a.)

In relation to Site B, Owner testified again that he uploaded any contractor and subcontractor lists and only used licensed contractors. (*Id.* at 111a.)

Based upon the evidence presented, the Board issued decisions affirming the LVNs.[5] Therein, the Board stated that, "[a]s the party challenging the [LVN], [BSD] had the burden of proving the [LVN] was issued in error." (Board Decisions, Conclusions of Law (COL) ¶ 14.)[6] The Board also concluded that "the City presented credible, persuasive, and sufficient testimonial and documentary evidence supporting the violations as described in the [LVN]" and that BSD "made no credible argument contradicting the City's showing." (COL ¶¶ 15-16.) Thus, the Board concluded BSD "failed to meet [its] burden of proof and the Board accordingly acted properly in denying [its] appeal." (COL ¶ 17.)

---

[5] The Board's written decision for Site A appears in the Reproduced Record beginning at page 140a, and its written decision for Site B appears in the Reproduced Record beginning at page 126a.

[6] While the Board made separate factual findings for each jobsite based on the testimony presented, its conclusions of law are identical.

4

BSD appealed the Board's decisions to common pleas, which ordered briefing and scheduled oral argument.[7] At oral argument before common pleas, BSD argued that, subsequent to the Board hearing, the subcontactors' OSHA cards were provided to L&I and asked that the matter be remanded for additional evidence to this effect. (R.R. at 159a.)[8] The City argued BSD, as the general contractor, was responsible for the job site and ensuring compliance with the Code, and Inspector's testimony established BSD violated the Code. (*Id.* at 160a) The City also argued that there is a presumption that municipal officers performed their duties properly and it was BSD's burden to show the LNVs were issued in error. (*Id.*) To the extent the OSHA cards were subsequently provided, the City argued that was outside the record. (*Id.* at 161a.) Because the Board's findings were supported by substantial evidence, the City asked that common pleas affirm the Board's decisions. (*Id.*) Following City's argument, BSD asserted on rebuttal that a safety manager was not needed as the jobsites were under the building height set forth in the Code. (*Id.*) It also argued that because it did not know who was at the site, it did not know which OSHA cards had to be provided. (*Id.*)

In identical Orders dated August 1, 2024, and exited August 2, 2024, common pleas denied BSD's appeals and affirmed the Board's decisions. (*Id.* at 164a-65a.) BSD timely appealed. In its subsequently issued opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), (Rule 1925(a) Opinion or

---

[7] BSD filed a brief addressing both sites but the brief is only docketed at common pleas' docket number 231000196, which corresponds to docket number 1078 C.D. 2024 in this Court. These dockets pertain to Site B. The City filed separate briefs to each common pleas' docket, though its brief at common pleas' docket number 231000198, which corresponds to docket number 1077 C.D. 2024 in this Court, is docketed twice. It appears the difference between the two versions is that the latter docket entry includes a proposed order. These dockets pertain to Site A.

[8] A copy of the transcript of oral argument before common pleas appears in the Reproduced Record beginning at page 158a.

Op.), common pleas rejected BSD's argument that the Board's findings were not supported by substantial evidence, explaining why Inspector's testimony constituted substantial evidence to support the same. (Rule 1925(a) Op. at 5-9.) To the extent BSD argued it was not required to have a safety manager on site because the buildings were below the height set forth in the Code, common pleas stated that "[i]f [BSD's] claims are correct, this one point of concession is insufficient to grant the entire appeal and reverse the Board's decision, particularly where substantial evidence was provided to support the other claims against [BSD]." (*Id.* at 9.) In response to BSD's claim that its subcontractors were OSHA certified, common pleas explained BSD was misconstruing the Code, which required not only that workers be certified but also to carry their OSHA cards with them at all times. (*Id.*) Finally, common pleas was not persuaded that the subsequent production of the OSHA cards "render[ed] the [Board's] decision improper." (*Id.* at 10.)

## II.    PARTIES' ARGUMENTS

On appeal, BSD argues: (1) the Board improperly placed the burden on BSD; (2) the Board's findings are not supported by substantial evidence; and (3) the Board, and in turn common pleas, committed an error of law or capriciously disregarded evidence because BSD was not required to have a safety manager at either site because they were under the Code's height requirement.[9] In particular, BSD asserts the Board placed the burden on BSD to prove the LVNs were issued in error when it was the City that should have had the burden to establish the violations in the first instance. BSD also argues that the Board's factual findings are not supported by substantial evidence as there was no evidence presented to show the individuals were employed by BSD or were performing duties at either jobsite. As for Inspector's

_____
[9] We have consolidated and reordered BSD's issues.

6

testimony, BSD calls it "unsupported, self-serving," and based on "pure conjecture." (BSD's Brief at 19-20.) It also asserts that Inspector admitted to not checking the online database for subcontractors at Site B. Finally, BSD asserts the violations as to needing a safety manager on site should be reversed as the evidence shows the buildings were not taller than three stories to trigger that requirement in the Code.

The City responds that BSD did not raise the burden of proof issue or the height threshold in its statutory appeal to common pleas, and, therefore, those issues are waived. The City asserts BSD only argued the record lacked substantial evidence to support the Board's finding that the individuals worked at the jobsites for BSD and that any violations were cured as the contractors had OSHA cards. According to the City, BSD did not assert the three-story height requirement in its brief to common pleas and the first time BSD raised the issue as to the three-story height requirement was in rebuttal at oral argument before common pleas. The City contends the only issue preserved for appellate review is whether the Board's findings are supported by substantial evidence, and Inspector's testimony and the documentary evidence presented shows they were.

## III. DISCUSSION

We begin first with the City's arguments that BSD waived its first and third issues by not raising them in a timely manner before common pleas. Generally, a party must properly assert an objection or raise an issue at the **first opportunity** in order to preserve it for appellate review. *Haverstick v. Pa. State Police*, 273 A.3d 593, 598 (Pa. Cmwlth. 2022). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a). "However, an exception to the general rule of

7

waiver may occur where counsel had no meaningful opportunity to raise an issue below." *Haverstick*, 273 A.3d at 598.

The City argues BSD did not raise either the burden of proof issue or the applicability of the Code section requiring a safety manager to be on site in its appeal to common pleas. From a review of the record, it is clear that BSD raised these issues at the hearing before the Board. (*See* R.R. at 98a & 111a (asserting the City had the burden of proof), 107a (objecting to Inspector's testimony on the grounds that a safety manager with an OSHA 30 card was not necessary when properties were below a certain number of stories).) After the Board's adverse decision, BSD appealed to common pleas and the appeal form to common pleas is similar to a notice of appeal from a trial court order, neither of which provide for the appellant to identify the bases for its appeal.[10] Thus, the first opportunity BSD had to specifically set forth the issues it was asserting on appeal was in its brief to common pleas. Therein, though, BSD only challenged what it perceived was a lack of evidence of whom the individuals the Inspector saw were and what they were doing, and also that the violations were cured because all of the workers at the jobsites had OSHA cards. The first time BSD raised the issue of the number of stories and applicability of the Code section requiring a safety manager on site was **in rebuttal** at oral argument before common pleas and that reference was almost in passing at the conclusion of the argument. (R.R. at 161a.) We cannot say raising it at this juncture was adequate to timely and properly preserve the issue. By this time, the City was operating under the reasonable assumption that the sole issues on appeal related to whether there was substantial evidence to support certain findings. Furthermore, at no point did BSD raise the burden of proof issue before common pleas. Because

---

[10] BSD's Notices of Appeal of the Board's decisions to common pleas are in the Reproduced Record at pages 45a and 58a.

8

BSD had a meaningful opportunity to raise these issues in its brief to common pleas but did not do so, we agree with the City that these issues are waived.

This leads us to BSD's substantial evidence challenges, which were properly raised and preserved before common pleas. As common pleas aptly explained:

> Substantial evidence has been defined as "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Township of Exeter v. Zoning Hearing B*[*d. of Exeter Twp.*], 962 A.2d 653, 659 (Pa. 2009). In assessing whether substantial evidence supported the agency's decision, the reviewing [c]ourt "must accept the credibility determinations made by the local agency which hears the testimony, evaluates the credibility of the witnesses and serves as fact-finder." [*In re*] *Nevling*, 907 A.2d [672], 674 [(Pa. Cmwlth. 2006)] (citing *Hinkle v. City of Phila*[*delphia*], 881 A.2d 22 (Pa. Cmwlth. 2005)).

(Rule 1925(a) Op. at 5.)

BSD argues the record is devoid of substantial evidence to support that the individuals whom Inspector observed were employed by BSD or were working at either jobsite. Notwithstanding that, at oral argument before common pleas, BSD apparently conceded the individuals were subcontractors and that their OSHA cards had been subsequently provided to the City, (R.R. at 159a), from a review of the record, there is substantial evidence that was also presented at the Board's hearing to support these findings. At Site A, Inspector testified he observed men eating in a van and when he approached them, he asked if they worked at Site A and they responded that they did. (*Id.* at 78a, 83a, 85a.) At site B, Inspector testified to observing men eating on the second floor of the structure, which was under construction. (*Id.* at 104a, 106a.) Contrary to BSD's assertions, this is substantial evidence to support the Board's finding that they worked at the jobsites.

In addition, although Inspector could not identify the individuals as employees of BSD or subcontractors, because the men refused to provide any sort of

identification, this does not obviate BSD's responsibility, as the prime contractor,[11] for all workers at its jobsite.  *See* Section A-105.3 of the Code, CODE § A-105.3 ("All contractors, whether licensed by the Department or exempt from licensing under State law, shall be responsible for compliance with this [C]ode and the technical codes in the performance of work."); *see also* 29 C.F.R. § 1926.16 (explaining that a contractor is not relieved of overall responsibility for a jobsite even if an express agreement is made with a subcontractor).

Furthermore, the fact that BSD may have at some point subsequent to the Board hearing and before oral argument with common pleas provided the OSHA cards for those individuals does not mean there was not substantial evidence to support the Board's finding that BSD violated Section A-1001.4 of the Code. Section A-1001.4(1) provides that, "[i]n order to protect public safety, all workers performing duties at a construction or demolition site, regardless of their position, shall have completed a course of OSHA 10 training, and **carry the card at all times**."  CODE § A-1001.4(1) (emphasis added).  Inspector's testimony that the individuals did not provide the required OSHA cards is substantial evidence to support a finding that BSD violated the Code in this regard.

BSD also challenges the Board's findings that it did not provide a list of its subcontractors to the City, as required.  Common pleas once again aptly explained that "[i]n a substantial evidence analysis where both parties present competing evidence, 'it does not matter that there is evidence . . . which supports a contrary finding to that made by the fact-finder[;] rather, the pertinent inquiry is whether there is any evidence which supports the fact-finder's factual finding.'"  (Rule 1925(a)

---

[11] "Prime [c]ontractor" is defined by the Code as "[a]ny contractor that is identified on a permit application as the contractor responsible for the construction authorized by the permit." Code § 9-1004(2)(b).

Op. at 8 (quoting *Mulberry Mkt. Inc. v. Bd. of Licenses & Inspections Rev.*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999)).) Common pleas also correctly explained that the Board, as fact-finder, makes credibility determinations, which cannot be disturbed on appeal. (*Id.* (citations omitted).) Accordingly, common pleas concluded that although Inspector and Owner gave conflicting testimony as to whether the required information was uploaded, the Board resolved that conflict in the City's favor. (*Id.*) We agree with this analysis as to Site A. However, Inspector did not provide the same testimony as to Site B. When asked on cross-examination as to whether he checked the system to determine if any of the contractors were registered, Inspector responded he did not. (*Id.* at 109a-10a.) Thus, there was no substantial evidence to support this finding as to Site B. Accordingly, we must reverse common pleas' Order to the extent it affirmed the Board's decision finding BSD violated the Code by not providing a list of subcontractors for Site B. We affirm in all other respects.

## IV. CONCLUSION

In sum, because BSD did not properly preserve the issues related to the burden of proof or that it was not required to have a safety manager on site because the structures were not more than three stories, those issues are waived. BSD did preserve its substantial evidence challenges, though. Upon review of the record, while the City submitted substantial evidence to support some of the alleged violations, it did not establish that BSD failed to submit a list of subcontractors for Site B to the City because Inspector testified he did not check the system for that site. Accordingly, we affirm in part and reverse in part.

_____
RENÉE COHN JUBELIRER, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of BSD Construction,　　:　CASES CONSOLIDATED
LLC　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　Nos. 1077 & 1078 C.D. 2024
Appeal of:  BSD Construction, LLC　　:

# **O R D E R**

**NOW**, December 18, 2025, the Orders of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matters, are AFFIRMED in part and REVERSED in part, consistent with the foregoing opinion.

_____
RENÉE COHN JUBELIRER, President Judge